(No. 20241.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES PATTERSON, Plaintiff in Error.

*Opinion filed October 25, 1930.*

O'HAIR & McCLAIN, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, Charles F. Tym, State's Attorney, and Roy D. Johnson, for the People.

Mr. Justice Farmer delivered the opinion of the court:

James Patterson, his wife, Anna Patterson, and his brother, Roy Patterson, were indicted jointly by the grand jury at the November term, 1929, of the circuit court of Edgar county for larceny. The indictment charged them with the stealing, on or about August 8, 1929, of twenty-eight White Rock chickens, of the value of $28, the property of C. P. Adams. The indictment as to Anna Patterson was *nollied*. James and Roy Patterson were tried before a jury, which found them guilty and their respective ages twenty-seven and twenty-four years. Motions for a new trial and in arrest of judgment were denied by the court and judgment was entered on the verdict sentencing the defendants to the Southern Illinois Penitentiary. James Patterson (hereafter referred to as defendant) has sued out a writ of error to have the record reviewed by this court.

The contentions relied upon by defendant for a reversal of the judgment are: (1) That the evidence does not support the verdict; (2) that ownership of the property as alleged in the indictment was not proven, and (3) that the court erred in instructing the jury.

Evidence presented by the People was substantially as follows: C. P. Adams, also known as "Plum" Adams, and his wife, resided on a farm of about 200 acres near Scottland, in Edgar county, Illinois. He owned the land and farmed it. They also raised White Rock chickens. During the night of August 8, 1929, twenty-eight White Rock chickens were stolen from about the brooder house, which was located in a fenced-in lot in the orchard and about seventy-five yards from the farmhouse. The chickens stolen weighed from three to three and one-half pounds each and the value of each fowl was about one dollar.

When baby chicks they had been purchased by Adams from a Cisna Park hatchery. Upon discovering the loss of the chickens Adams and his wife made an investigation. They learned that ten White Rock chickens had been sold and delivered to the Shannon & Havens poultry house at Dana, Indiana, on the morning of August 10. These chickens were delivered to the poultry house in a Model-T Ford roadster by Roy and Anna Patterson. Anna Patterson transacted the sale and received the money for the chickens. The defendant, Roy and Anna Patterson were seen in or beside a Ford car in an alley in Dana within thirty minutes after the sale of the chickens at the poultry house there. The investigation further disclosed that Roy Patterson about August 12 had sold seven White Rock chickens at Campbell's store in Bono, Indiana, which is about three miles from Dana, and had also sold seven White Rock chickens about August 13 at the store of Cleve Jones in West Clinton, Indiana. A truck driver for the Dana poultry house brought to that poultry house the seven White Rock chickens sold at Bono by Roy Patterson, and another truck driver for the same poultry house picked up some of the White Rock chickens which Roy Patterson sold at West Clinton. About August 15 Adams and his wife went to the Dana poultry house, where they identified a number of White Rock chickens which had been stolen from their farm, and they took away some of the chickens. The defendant, his wife and his brother, Roy, lived about a mile from the Adams farm. Defendant was arrested in the afternoon of August 20 or 21 and taken to the Edgar county jail. Anna and Roy Patterson were not taken at the same time because they ran when the officers went to serve a warrant upon them. They were later arrested and Anna was released upon giving bond. The two Patterson brothers were held in the county jail. At the jail on the evening of August 21, in the presence of the sheriff and deputy sheriff of Edgar county and an investigator from the Pinkerton

detective agency, defendant and Roy Patterson made statements admitting that they had stolen the chickens of Adams and had sold them.

The defendant testified that he knew nothing about the stealing of Adams' chickens until the sheriff came out to his house. He denied having been present when the chickens were stolen or sold, and denied having made any statements to the officers at the jail that he had assisted or had anything to do with stealing the chickens.

Roy Patterson testified, in substance, that he was single; that he was twenty-five years old; that he is a cripple and unable to read or write; that he lived with his brother, James, and the latter's wife, and worked as a common laborer and raised garden truck. He stated that about one o'clock A. M. on August 8, 1929, he stole about seventeen White Rock hens from Plum Adams at the latter's farm; that Anna Patterson was with him and helped carry the chickens, which they sold next day at Dana. He admitted making a second trip two or three days later to the Adams farm and stealing eight or nine White Rock chickens, which he sold at Bono. He stated that defendant was not present when the chickens were stolen or when they were sold. He also testified that while in jail he told the officers and detective who testified for the People on the trial that he had stolen the Adams chickens and that defendant was not with him.

We have stated the material testimony presented on the trial as it appears from the briefs and abstract. It has many times been held that where there is contradictory evidence it is for the jury to determine what witnesses are entitled to the greater weight and credit. It is only when a reviewing court is satisfied, from a consideration of the entire record, that there is a reasonable doubt of the defendant's guilt that the verdict and judgment will be disturbed. The jury evidently believed the testimony of the State's witnesses and disbelieved the story told by defend-

ant and his brother that defendant was not present when the chickens were stolen or sold and that he made no statement to the officers while in jail that he was connected with the theft. As we view the record the belief adopted by the jury is neither unreasonable nor improbable, and we would not be warranted in reversing the judgment on the ground contended for by defendant that the verdict is not supported by the evidence. *People* v. *Callahan,* 324 Ill. 101; *People* v. *Binger,* 289 id. 582.

The indictment alleged that the chickens stolen were the property of C. P. Adams, and it is contended such ownership was not satisfactorily proven. The record contains a seemingly unnecessary amount of examination of Adams for the purpose of explaining or establishing that the chickens stolen belonged to him rather than to his wife, or were, as he first testified, what might be termed "partnership chickens." The record shows that Adams bought the chickens, when little chicks, from a Cisna Park hatchery and paid for them with his check; that when chickens were sold, checks in payment therefor were given in his name. The record sufficiently shows title to the property as alleged in the indictment. To hold otherwise would be in contradiction of Roy Patterson's testimony, if any of it is to be believed, as he testified that he stole the chickens from Plum Adams and that they were the property of Plum Adams.

Counsel for defendant complain of the giving of People's instruction No. 1 and refusing to give defendant's instructions Nos. 12 and 13. Instruction No. 13 offered by defendant was included in other instructions given, and instruction No. 12, relative to the necessity of proving the ownership of the property stolen as alleged in the indictment, was fully covered by modified instruction No. 10, which was given by the court. People's instruction No. 1 was as follows:

"The jury are instructed that the rule requiring the jury to be satisfied of the guilt of the defendant from the evi-

dence beyond a reasonable doubt in order to warrant a conviction is complied with if, taking the evidence all together, the jury are satisfied beyond a reasonable doubt that the defendant is guilty. The reasonable doubt that the jury is permitted to entertain to authorize an acquittal must be as to the guilt of the accused on the whole evidence and not as to any particular fact in the case, not material to the issue in the case."

Complaint is made particularly of the last sentence of this instruction, and defendant relies upon *People* v. *McGrane*, 336 Ill. 404. In that case the same instruction was criticised and held to be improper, as it leaves the jury to determine the legal question as to what are the material facts or essential elements of the crime charged, and there was in that case no other instruction given defining the essential elements of the crime with which the defendant was charged. The same instruction was considered in *People* v. *Costello*, 320 Ill. 79, and *People* v. *Cramer*, 298 id. 509. In the former case this court said: "In *People* v. *Cramer, supra,* it was said: 'Whether such an instruction would be ground for reversal might depend upon the state of the record, which might or might not raise an inference that the jury had been mistaken in their view of the law as to what was material.' The jury could not have been misled by this instruction in view of the evidence in the case and the conclusive proof of the defendant's guilt." In the case at bar People's given instruction No. 5 defined the crime of larceny, and defendant's given instructions Nos. 5, 7 and 8 advised the jury that they must be convinced of the guilt of defendant beyond all reasonable doubt. The evidence in the record conclusively proved that the crime of larceny had been committed and the testimony of Roy Patterson admitted the commission of the crime by himself and defendant's wife. The only controverted question that the jury had to decide was as to whether or not defendant was associated with his brother and his wife in the

572

offense charged and committed. The giving of the instruction could not have misled the jury under the condition of the record and in our opinion did not prejudice the rights of defendant to such an extent as to constitute reversible error.

We find no error in the record to warrant a reversal of the judgment, and it will therefore be affirmed.

*Judgment affirmed.*